Good morning. My name is Michael Strauss. I'm here today representing the appellants Carl Curtis and Arthur Williams. I'd like to reserve two minutes for rebuttal. Please watch your time. May it please the court. The briefs in this case were lengthy. I'm not going to rehash anything that's in the briefs. Rather, I will discuss the developments in the cases the parties identified as being related under Circuit Rule 28-2.6 and how they illustrate why the plaintiff's claims here are not preempted by the LMRA. In its briefs, Irwin identified Alaska Airlines v. Shirky 846F31080 as being a case with similar issues about federal preemption. The issue in Alaska Airlines was whether the Railway Labor Act, which is treated similarly to the Labor Relations Management Act, preempted a CBA-covered employee's claims under a leave law. The state leave law in question provided that if a CBA or an employer policy provided for paid leave, then an employee could use that leave to care for a sick child. At the time that Irwin designated the Alaska Airlines case as a related case, a divided panel of this court had held that the employee's state law claim was preempted because the state law right and the CBA were inextricably intertwined. In August of this year, the Ninth Circuit, sitting en banc, came to a different conclusion. The en banc decision can be found at 898F3904. The court held that the state law claim was not preempted because it did not involve quote-unquote a CBA dispute. What do we do with the sections in the state statute which make exceptions? I think this is for the overtime pay and meals rest period. We're opposing counsel points to section 514 and 512 that say that those provisions can be superseded by the CBA. Those provisions of the labor code, and we're talking about labor code sections 512 and 514 and related provision in wage order 16, those are affirmative defenses. To the extent that an employer proves that there's a valid collective bargaining agreement that meets certain criteria, there is an exemption from overtime in section 514 and from meal periods in section 512. Is that what Branish said, that it was an affirmative defense? The California Supreme Court in Ramirez versus Yosemite Water has identified overtime exemptions as being affirmative defenses. So pursuant to the Supreme Court of California, they are affirmative defenses. So Branish seemed to just say apply it and say it was that those provisions didn't apply. I didn't see I didn't see a holding that it was an affirmative defense. I'm not sure the issue was was addressed in Branish. To the extent that Alaska Airlines is going to apply it in this case and its primary holding that this state statute merely references the CBA is not itself preempted, even though that state statute in Alaska Airlines was predicated on the existence of a CBA. The claim didn't arise unless there was a CBA in existence that actually set forth a leave law. In that circumstance, the Ninth Circuit held on Bonk that even though the right from state law was dependent in some extent or conditioned upon the existence of a CBA with specific terms, that the interrelation between the two was not such that federal law would preempt the state law claim. What the agency interpreted the statute in that case as creating a independent state right for what the I guess the the the employee, because she wasn't really a party to the case, what the employee was claiming. Your Honor would know better than than I would given that Your Honor wrote the dissent in that opinion. At the end of the day, the Ninth Circuit concluded that the state right rose independently of the CBA. This year we have these California appellate cases saying that the statute simply doesn't apply if it's a valid CBA as defined in that statute. Did you disagree that the CBA has the elements defined in the statute? For the purpose of section 514, which is the overtime exemption, yes. We disagree that and it's lacking. The the problem with the CBA is that, backing up, this claim is predicated on the fact that these employees are working on oil platforms, they're confined to the work site, and they're only being paid 12 hours a day. Under California law, on the Mendiola decision, if you're restrained to the work site, you need to be paid for all hours. Are the employees on call while they're on the the oil rig? Is that part of their employment contract? Because Mendiola was expressly just looking at employees who were on call and what if that was deemed to be hours worked. Mendiola dealt with two issues. One was whether employees were on call and the other was whether the employer could exclude sleep time from their hours of work. While they were on call though, right? Because I thought the premise was that the employees were on call for those periods. The premise was that they they were on call, but there were two separate holdings. One dealt with the on-call time and one dealt with the sleep time. Are the employees, in this case, on call while they're on the oil rig? Is that part of their employment relation? Yes, I would say employment relation, but I haven't mentioned anything about them being on call. It's a practical matter because the opposing counsel talks about law of the shop. So it's law of the shop, they're on call? Yes, yes, and they need to respond to emergencies at a moment's notice. I mean it is, they are working on oil platforms where it's very dangerous and they need to respond as quickly as they possibly can. Counsel, there was a case about a month and a half ago called McRae versus Marriott Hotel Services. Are you familiar with this case? I read it, Your Honor, yes. It seems like that's actually a very good case for your position that deals with the San Jose minimum wage law and the Ninth Circuit said that that was not preempted. Absolutely. I'm going to be asking the other side about McRae here in about four minutes. Do you want to say something about that case here while you still have some time? I don't have a ton of time, but I'd like to just say that there's a state law right, minimum wage right, that is a non-waivable statutory right and I think that if you follow the reasoning McRae and also the Alaska Airlines, you'll see that there's no way that the claims here are going to be exempted. Let me ask you this. Or preempted, I'm sorry. What rate are you claiming your client should have been paid for the 12 hours? The rate that they should have, well there's two claims, there are alternative claims. One is a minimum wage claim and one is an overtime claim. So under the minimum wage claim, what rate are you claiming they should have been paid for the 12 hours? At least the minimum wage. Well, but as I read your papers, you weren't asking for the minimum wage, you were saying multiply what their pay stubs show they got paid by the 12 hours. An overtime claim, or sorry, minimum wage claim doesn't involve any kind of multiplication. It's just their straight minimum wage. But are you saying that they should have been paid for those 12 hours minimum wage, statutory minimum wage? Yes. Or the agreed upon minimum wage, yes. Well what do you mean agreed upon minimum wage? Well, a minimum wage claim can be based on an agreed minimum, or it can be based on a statutory minimum wage. And if it's agreed, isn't that set by the CBA? It could be, but merely having to look at the CBA to determine what the rates are, you could also look at their paycheck stubs to look at what their rates are. I don't believe that that result involves any kind of dispute. There's no dispute as to the rates in the CBA. But the rates assume payment for the hours that are laid out in the CBA. You're essentially asking for those rates to be applied to 12 additional hours. Correct. Do I understand your argument? Correct. In a minimum wage claim, yes. It's either that or the statutory minimum wage. I don't think that issue has been clearly resolved yet. Don't you have to say what your claim is? Our claim is for the minimum wage, it's a statutory rate. Statutory minimum wage? Yes. And so that's less than the wage that's been Now with regards to the overtime, the second part of your question is what rate? Well that rate would be, you'd look at your paycheck stub, what rate are they getting paid per hour, multiply that times time and a half, that would be for all overtime hours. For double time hours, we multiply it by two. I just want to highlight one thing because I'm running out of time here. The section 514 exemption deals with overtime. To the extent there was any kind of preemption or that exemption applied, it would only affect the overtime claim. The minimum contract around the minimum wage. So the minimum wage claim has to survive even if the overtime claim is preempted or exempted. For the middle period claim, I bring the court's attention to the latest version of section 514 which only gives the exemption to certain categories of employees and they're not involved here. I'll reserve the rest for rebuttal. Thank you. All right. Good morning, your honors. May it please the court, my name is Ron Holland. I represent Irwin Industries in this matter. The district court's order of dismissal on preemption grounds was correct. It applied the correct legal standards. It looked at the plaintiff's claims and the plaintiff's dispute. These are reading classes, sorry. To determine whether preemption should apply. It went through the two-step Burnside analysis and concluded based upon plaintiff's initial dispute that the collective bargaining agreements didn't apply because of the location of the platforms. That is, the platforms didn't reside in California. They've now said out of position though. A convenient concession, your honor. However, if we do concede and I can pass over the dispute regarding whether the contracts apply. But the contracts, whether they apply or not, is critical to the Mendiola claim or the so-called Mendiola claim. The contract set forth, as your honors have already pointed out, a variety of provisions that set forth work rules and law of the shop is incorporated in the collective bargaining agreement through the Supreme Court's cases in Alice Chalmers and Conrail and whether or not these individuals were under the employees control is going to be determined by many of the provisions in the collective bargaining agreement versus, say, non-union employees that might be covered by other rules, employee handbook, or other rules that apply to the platforms. If I can, I'm sorry, I thought you had a question. If I can get right into it given the limit of ten minutes. Your honors are correct. First of all, with regard to the overtime and the meal period claims, there are specific exemptions in the California Labor Code in 512, 514, and incorporated in Wage Order 16, which specifically applies to these employees, which states that to the extent that the collective bargaining agreement meets the qualifications of that exemption, those statutes don't apply. If those statutes don't apply, then we trigger the first prong of the Burnside Test. That is, these rights don't arise out of state law. However, they arise out of the affirmative defenses and wouldn't affect a preemption analysis. I disagree, your honor, and I think your honor is correct pointing out the Vranish case. The Vranish case is very similar to the facts here. The issue is that the matter of the claims are either preempted or they're dismissed, one or the other. If the court finds that the exemption applies, then arguably the claim is dismissed. If the court finds that the exemption applies, however, there's a question regarding interpretation, then preemption would kick in at that point to determine whether the whether the exemption is met under the collective bargaining agreement. It looks like Vranish was a summary judgment case. Are there cases applying this principle at the motion to dismiss or demur stage? Your honor, I would say most preemption cases occur at the 12B6 or demur stage in state court. Off the top of my head, I don't have one to point to, your honor. Do you want to speak about the McRae case? I know you do, your honor. McRae is distinguishable in that the question there was whether the prevailing wage ordinance should apply to these workers. The wasn't an issue of preemption. We trigger the first prong of Burnside. Does the right arise out of state law? Plaintiffs contended that the right to that $10 an hour wage arose out of state law. The second question was, if so, does the contract require any interpretation? The court merely looked, saw that the workers were being paid less than the $10 an hour and determined that merely looking at the contract was enough. Now there was a question regarding whether the waiver was sufficient, but the court was able to look at the waiver and determine from a legal standpoint that the waiver did not meet the necessary requirements of the waiver under the ordinance and therefore there was no preemption. And then you would say this case is different in which respect? What's the key difference? You said that there's distinguishables. What's the key difference in this case in McRae? Well, I period claim. Those, I'm not, I'm more worried about the minimum wage claim. So the minimum wage claim is, you know, we're calling a minimum wage claim. However, the legal character of that claim is hours worked, whether they were under the employer's control. We can't determine whether they were the under the employer's control through the several factors set forth in Morillion, I believe, is the case that set forth the seven-factor test of are they required to live on the premises, geographical restrictions, the frequency of the calls, including and not limited to whether this was for the benefit of the employee or the employer. One, there's no evidence other than the geographical location, there's no evidence like there was in Mendiola or the ambulance case which is escaping me right now, which was a 24-hour shift case, that these individuals were required to live on that on that rig. There's no evidence whatsoever. Two, the question is whether that was a bargain for proposition. It's quite possible that they bargained for that proposition to live on the rig so they didn't have to go back and forth. That might have meant more meaningful wages, better benefits, and a variety of other things that counsel points out that there's no mention of in the collective bargaining agreement. There's no mention of platform, there's no mention of helicopter, there's no mention of how they get there. No, there's certainly no mention. So if I can paraphrase what you're saying, you're saying that to determine whether there really is a minimum wage claim here, to see how many hours were they allowed to be or were they owed to be paid in a sense, and the collective bargaining agreement in a sense determines that question. I would say that in order to to determine whether there's a minimum wage claim, we need to determine whether they were under control and on call in that second set of 12 hours. And so there's a provision in the collective bargaining agreement special assignments that's a 12-hour shift. We don't even know whether that provision was triggered. Plaintiff's counsel alleges that they work 12 hours, but we don't know whether they were eight-hour shift people, 10-hour shift, or 12-hour shift individuals. The opposing counsel says as practical matter these employees were on call while they were on the oil rig. Do you agree with that or is that another thing that that would require review of the CBA or the common law of the shop? I would say that one, whether they were required to be on the oil rig requires an analysis of the collective bargaining agreement, the common law of the shop, and the party's practice, because on the face of the agreement it doesn't necessarily say. We're at the 12 v 6 stage, so don't we have to take the allegations as true for now? I don't know that we have to. Well, plaintiffs don't allege that they were required to be on the rig. They claim that they were not reasonably permitted to, reasonably able to leave the rig. So they're focusing on the geographic location of the platform. If that's enough, that one factor to determine control, then the other factors go away. And even the Ninth Circuit, as well, all of the factors need to be considered in order to determine whether individuals are under the employer's control on call and working. And there are a variety of other factors to consider. In addition, there are specific provisions in the collective bargaining agreement, as I was saying, that 12-hour shifts for time in excess of 12 hours, premium pay is paid. Nowhere in the is call-outs after your regularly scheduled time. What does a call-out mean? Does a call-out mean you get paid for the time that you're under the employer's control and that you're not under the employer's control when you're not called out? These are provisions that need to be determined by an arbitrator, their breadth, their scope, and their application in order to get to the legal character or in the inherent nature of plaintiff's underlying minimum wage claim. Further questions, Your Honor? Apparently not. If I may, counsel, I may attempt to go back to the Shirk or Shirky case. Your Honor is well familiar with the case, as is the panel. We do understand that it was decided 6-5, but we wouldn't necessarily say that the analysis changes under the Alaska Airlines case. If you take into consideration, if you implement the requirement that there be an active dispute, there's certainly no question that there's an active dispute regarding the overtime claim, the meal period claim, and specifically whether those hours were hours spent under the employer's control or not. Thank you, Your Honor. First off, there's no dispute over any contract terms, so looking to the CBA to determine the level of control wouldn't require any interpretation. There's no preemption when the claims invite the use of the CBA to prove a defense. McCrae is a prevailing wage claim, it goes to Judge McCrae, a prevailing wage claim is a minimum wage claim. It's a contracted rate. And this is not a case for breach of a CBA. The same claims are here, are pled in the Newton v. Parker drilling case where there was no CBA. And the other two cases that we identified as related cases in this court, none of them have a CBA, and we all bring the same claims on behalf of the plaintiffs. Thank you. Both sides for their argument in the case of Curtis and
judges: Ikuta, Owens, Gilliam